JAMES T. HALL, Respondent, *v.* WALTER E. LAUDERDALE,
Appellant.

An agent, acting within the scope of his authority, and disclosing his agency,
will not be personally bound, unless upon clear and explicit evidence of
such an intention. The rule is still stronger in the case of a public
agent.

An action cannot be maintained against an agent, although, having money
of his principal's in his hands, applicable to the payment of the debt of his
principal, he refuses to pay it. He is responsible to his principal only for
neglect of duty, and owes no legal duty to the creditor.

The provision of section twenty-two of the act of 1864 (chap. 8, Laws of
1864), authorizing the raising of money for paying bounties, etc., being
silent as to the means to be used to procure enlistments, it devolved, by
necessary inference, upon the board of supervisors to adopt such means,
and agencies to accomplish the purposes of the act, as they should deem
appropriate. A resolution of such board appointing a recruiting agent,
authorized him to appoint sub-agents; his contract for their services
bound the county, and he is not personally liable. (GROVER, J., dis-
senting as to power to bind county.)

Even if the board had no authority to appoint the agent, yet, as its power
was determined by the statute, known to both parties, the agent is not
personally liable. The agent does not warrant the capacity of the prin-
cipal to contract. '

(Argued June 1st, 1871; decided September 2d, 1871.)

'APPEAL from judgment of the late General Term in the
seventh judicial district, reversing judgment for plaintiff,
entered in Livingston county on the report of a referee.
The facts of the case are sufficiently set forth in the opinion.

*Scott Lord,* for appellant, that the referee erred in
refusing to nonsuit plaintiff, *The People* v. *The Board of
Supervisors of the County of Livingston* (34 N. Y., 516).
Plaintiff was authorized to appoint a sub-agent. (Story on
Agency, §§ 73, 201; Paley on Agency, 197, 200; 2 Kent's
Com., 617, 618; *Gage* v. *Sherman,* 2 N. Y., 497.) A public
agent can never be held personally liable, except under an
express promise. (*Walker* v. *Swartout,* 12 Johns., 444; *Oli-*

*ver* v. *Hicks*, 18 Johns., 122; *Fox* v. *Drake*, 8 Cow., 191; *Belknap* v. *Rinehart*, 2 Wend., 257; *Osman* v. *Kerr*, 12 Wend., 179; *Nichols* v. *Moody*, 22 Barb., 611, 614, 615, 619; *Allen* v. *Barela*, 7 Bosw., 218, 219; *Hodgson* v. *Dexter*, 1 Cranch, 345; 2 Kent's Com., 4th ed., 632; Story on Agency, § 306.)

*J. B. Adams*, for respondent.  That defendant is personally liable.  (Dunlap's Paley on Agency, 394; *Murdock* v. *Aiken et al.*, 29 Barb., 59; *Ross* v. *Curtis*, 30 Barb., 238; *Pumpelly* v. *Phelps*, 40 N. Y., 59; Dunlap's Paley on Agency, 380–382; *Taft* v. *Brewster*, 9 Johns., 334; *Barker* v. *Insurance Co.*, 3 Wend., 94; *Pentz* v. *Stanton*, 10 Wend., 277.)

ANDREWS, J.  The board of supervisors of Livingston county, acting under the authority, conferred by the twenty-second section, of chapter eight, of the Laws of 1864, provided by resolution for raising money on the credit of the county, to fill the quota of the county, under the call of the president of the United States for volunteers, of July 18, 1864.

The county assumed, in its corporate capacity, to provide the means to raise by voluntary enlistment, the men required to meet the demand of the general government, and thereby avert the necessity of a conscription.

That this was the nature of the proceedings, taken by the board of supervisors, was substantially held by this court in the case of *The People* v. *The Board of Supervisors of Livingston County* (34 N. Y., 516).

The authority given by the twenty-second section of the act of 1864 was, to raise money on the credit of the county, for the use of the county, and "for the purpose of paying bounties to volunteers into the military and naval service of the United States, during the existence of the war, and for the purpose of paying the incidental expenses of such volunteering, etc."

The act is silent, in respect to the means to be used by the supervisors to procure enlistments; and as to the methods by which the ultimate object in view should be secured.

The money, when raised, was to be used for the purposes indicated in the act; and in the absence of any direction in the statute, it devolved by necessary inference, upon the board of supervisors, to adopt such means and constitute such agencies, to accomplish the purposes of the act, as they might deem appropriate.

The resolution of August 3, 1864, passed by the board of supervisors of Livingston county, constituted each supervisor, "recruiting and disbursing agent for his respective town;" and authorized him to draw from the treasury of the county, a sum sufficient to pay the bounties, and expenses fixed by the resolution, in procuring volunteers to fill the assigned quota.

The defendant accepted this agency for the town of Geneseo, of which he was supervisor, and employed the plaintiff to assist in procuring volunteers, to be credited to the town, upon an agreement to pay him the sum of twenty-five dollars for each man, to the number of twenty-five, whose enlistment should be secured by him.

It is claimed by the counsel for the plaintiff, that the defendant was not authorized by the terms of his appointment, to bind the county by the appointment of sub-agents, or by an agreement to pay them for their services.

The compensation which the defendant was to pay the plaintiff, was within the sum which the defendant was authorized, by the resolution of the board of supervisors to pay for expenses.

The referee finds, that the agreement between the parties, was made, while the defendant was engaged in filling the quota of the town, and that "assistance was necessary" in the prosecution of the work.

The resolution appointing the defendant, recruiting agent for the town of Geneseo, does not in terms, authorize the employment of other persons to assist him.

If an authority existed in the defendant for this purpose, it is implied from the authority given him, and from the nature of the business to which the agency related.

The appointment of an agent, in general, carries with it all powers necessary, proper and usual, to effectuate the purposes of the appointment.

The agent may use the ordinary, and appropriate means in execution of the power given to him; and they are deemed to be comprehended within the authority, although not expressed. (Story on Agency, § 97; *Com. Bank* v. *Norton,* 1 Hill, 504.)

We may take notice, as a part of the history of the time, of the circumstances attending enlistment, into the military service during the late war.

In the outset, the ranks of the army were readily recruited, and the tender of services exceeded the demand of the government.

But the extent, and frequency of the calls made, after a time diminished the number of men available for military service; and the protraction of the struggle, and the natural discouragement resulting from frequent reverses, rendered it difficult for the localities to meet the demand for additional men, under the call of July 8, 1864.

The system of bounties; the active competition between counties and towns; the desire to avoid a forced levy of men; the urgency of the general government; all contributed to make necessary the most prompt, and effective measures on the part of the authorities to procure enlistments.

Agents appointed by the State, and by counties and towns, were sent to remote parts of the country, and the use of money, supplemented by active personal effort, was necessary to fill the quota demanded.

In view of the circumstances, and in the absence of restrictive words, we are of opinion that the employment of sub-agents by the defendant, to assist in the business of recruiting, was within the authority conferred upon him, and a proper and necessary means in executing it.

It cannot reasonably be supposed that the defendant was expected, by personal solicitation and effort, to secure the requisite enlistment, without availing himself of the services and assistance of others.

The conclusion upon this branch of the case is, that it was within the scope of the authority conferred upon the defendant, to bind the county by a contract with the plaintiff for his services in procuring enlistments.

But it is urged by the plaintiff, in support of the judgment, that the contract was the personal contract of the defendant, and that he is personally bound to perform it.

The plaintiff, when the contract was made, had notice of the resolutions of the board of supervisors, and of the official character of the defendant.

The referee finds that the defendant, in making the contract, was acting under the resolution; and the evidence leaves no room to doubt that the plaintiff so understood it.

The defendant had authority to make the contract for his principal; and, upon the facts proved, the law adjudges it to be the contract of the principal.

When the agency is disclosed, and the contract relates to the matter of the agency, and is within the authority conferred, the agent will not be personally bound, unless upon clear and explicit evidence, of an intention to substitute, or to superadd his personal liability for, or to, that of the principal.

In case of written agreements executed by an agent, the agent is, in general, personally bound, if the instrument can have no legal operation against the principal.

But in construing oral agreements made by an agent, courts give effect to the real intention of the parties, unembarrassed by technical rules of construction; and when the act is within the authority, the presumption is, that the agent intends to bind the principal, and not himself. (Story on Ag., 261; 1 Am. Ldg. Ca., 449, note; *Key* v. *Parnham*, 6 Har. & Jo., 418; *Bank of Genesee* v. *Patchin Bank*, 19 N. Y., 312.)

The defendant, moreover, in making the contract, was acting as a public agent; and in such case much stronger evi-

dence is required, to rebut the presumption, that the parties did not contemplate the personal liability of the agent, than when the contract and agency is of a private nature. (2 Kent, 632; *Walker* v. *Swartout*, 12 John., 444; *Olney* v. *Wickes*, 18 John., 122; *Osborne* v. *Kerr*, 12 Wend., 179.)

If it should be conceded, that the action of the board of supervisors in appointing recruiting agents, was not authorized by the law of 1864, as is claimed by the counsel for the plaintiff, it does not follow that the defendant is personally bound by the contract.

It is the general rule that an agent, to avoid personal liability, must contract in such a form as to give a remedy against his principal; and if in making a contract in the name of his principal, he acts without authority, or beyond it, he becomes personally liable. (*Eaton* v. *Bell*, 5 Barn. & Ald., 34; *White* v. *Madison*, 26 N. Y., 117.)

The rule, that the agent is liable when he acts without authority, is founded upon the supposition, that there has been some wrong, or omission on his part, either in misrepresenting, or in affirming, or concealing the authority under which he assumes to act.

The authority possessed by the board of supervisors was derived from the statute; and the boundaries of their power were known as well to the plaintiff as to the defendant.

The defendant had authority, in fact, to make the contract. If the principal is not bound, it is not because the contract is not within the terms of the authority granted, but for the reason that it was *ultra vires*. The agent does not warrant the capacity of the principal to contract.

If he acts within his instructions, and in good faith, especially when the facts are equally known to both parties, he is not personally responsible, although it may happen that the authority itself is void. (2 Kent, 647; Story on Ag., 265; Broom's Leg. Max., 607; *Smout* v. *Ilbery*, 10 Mess. & Wells., 1; *Jefts* v. *York*, 10 Cush., 392; *Walker* v. *Bank of State of New York*, 9 N. Y., 582.)

The remaining ground upon which the liability of the defendant is claimed, is that he had in his hands and under his-control, money of the county, applicable to the payment of the demand of the plaintiff, for which an action for money had and received to the plaintiff's use can be maintained.

The relation between the county, and the defendant, created by the resolution of the board of supervisors, and the acceptance by the defendant of the appointment under it, was that of principal and agent.

The defendant was bound to the county for the faithful discharge of the duties of the agency, and to account for all money received by him belonging to the principal.

The act of the agent in making the contract with the plaintiff was, in law, the act of the county; and for any breach of that contract, the county, and not the agent was liable.

If the agent had embezzled, or misapplied the money of the principal, provided for the payment of the plaintiff's demand, the loss must have been borne by the county, and the plaintiff's debt would not have been discharged.

The defendant was responsible to the principal, and to the principal alone, for any omission or neglect of duty in the matter of his agency.

There was no privity of contract between the plaintiff, and the defendant. The latter owed a duty to the county, whose agent he was; but he owed no legal duty to the plaintiff.

The fact that a breach of a contract, is attributable to the violation, by an agent of his duty to his principal, does not give a right of action against the agent, to the party who had a right to demand performance.

The money, received by the defendant, was the money of the principal. It was received by him for disbursement, in the general business of his agency. It was not received under an express or implied contract, to pay out of it the demand of the plaintiff.

It was held by this court, in *Colvin* v. *Holbrook* (2 Comst., 126), that an action would not lie against a deputy sheriff, to recover money, rightfully received by him in that character,

upon process in favor of the plaintiff, although it was demanded of him, while yet in his hands, by the person entitled to receive it from the sheriff. The case is an application of a general principle, governing the relation of principal and agent, and the relations of third persons to them. (*Denny* v. *The Manhattan Co.*, 5 Denio, 639, and cases cited.)

In this case, the statute imposed no duty upon the defendant, as in *Ross* v. *Curtis* (30 Barb., 238). There was no trust impressed upon the fund, when it came to the hands of the defendant, in favor of the plaintiff. The title to the money remained in the county, while it was in the hands of the agent, and it could at any time compel him to account for it.

There is still another decisive reason against maintaining the action, upon the ground suggested. The defendant did account with the county, and the reciprocal claims growing out of the agency, were adjusted and settled between them, before the commencement of this action.

The judgment should be reversed, and a new trial granted.

Agreed to; GROVER, J., dissenting as to power of defendant to bind county.

Judgment reversed.